**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>vs.<br><br>Sergio Guerrero,<br><br>    Defendant. | No. CR 19-1468-TUC-CKJ (MSA)<br><br>**ORDER** |

On February 19, 2020, Magistrate Judge Maria S. Aguilera issued a Report and Recommendation ("R&R") (Doc. 33) in which she recommended that the Motion to Suppress Evidence Obtained as a Result of an Unlawful Detention (Doc. 21) filed by Sergio Guerrero ("Guerrero") be granted. The government has filed an objection (Doc. 38). Guerrero has filed a response (Doc. 40) and the government has filed a reply (Doc. 43).

The standard of review that is applied to a magistrate judge's report and recommendation is dependent upon whether a party files objections – the Court need not review portions of a report to which a party does not object. *Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 472-73, 88 L.Ed.2d 435 (1985). However, the Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instruction." Fed. R. Civ. P. 72(b)(3); *see also* 288 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").

*Report and Recommendation – Factual Background*

The Court adopts the factual background of the R&R, to which there were no objections.

*Traffic Stop and Consensual Search*

The magistrate judge determined the traffic stop was not unlawfully prolonged to conduct the consensual search. Neither party has objected to this finding. The Court adopts this portion of the R&R.

*Reasonable Suspicion Without De Facto Arrest*

The magistrate judge determined Trooper Amick did not have reasonable suspicion to detain Guerrero following the consensual encounter and vehicle search. Rather, she found the detention of Guerrero became a *de facto* arrest unsupported by probable cause.

A law enforcement officer conducting a traffic stop may question a suspect about issues unrelated to the purpose of the stop, but cannot unduly prolong the detention. *Muehler v. Mena*, 544 U.S. 93, 101 (2005); *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (authority for a seizure ends "when tasks tied to the traffic infraction are—or reasonably should have been—completed" because the purpose of a traffic stop is to address the traffic violation); *United States v. Mendez*, 476 F.3d 1077, 1080 (9th Cir. 2007). Indeed, if officers develop an independent reason to detain a suspect beyond the period of time necessary to complete the traffic investigation, they may prolong the detention. *See United States v. Evans*, 786 F.3d 779, 788 (9th Cir. 2015), *citing Mendez*, 476 F.3d at 1080. Additionally, the detention of a suspect during an investigative stop is justified while officers diligently pursue the means of investigation. *United States v. Sharpe*, 470 U.S. 675, 685-87 (1985) (rejecting a "bright line" rule of time limitation on investigative stops).

The magistrate judge determined Trooper Amick did not have reasonable suspicion to detain following the consensual search. As summarized by the magistrate judge:

[R]easonable suspicion 'exists when an officer is aware of specific, articulable facts

- 2 -

> which, when considered with objective and reasonable inferences, form a basis for *particularized* suspicion.'" [*United States v. Landeros*, 913 F.3d 862, 868 (9th Cir. 2019) (emphasis in original) (quoting *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (en banc)]. This determination turns on "the totality of the circumstances surrounding the stop, including 'both the content of information possessed by police and its degree of reliability.'" *United States v. Brown*, 925 F.3d 1150, 1153 (9th Cir. 2019) (quoting *United States v. Williams*, 846 F.3d 303, 308 (9th Cir. 2016)).

R&R, p. 5. The magistrate judge determined Trooper Amick did not use "the 'least intrusive means reasonably available to verify or dispel' his suspicions of ammunition[] smuggling[,]" thereby converting the investigatory stop into a *de facto* arrest. R&R, p. 7, *citing Florida v. Royer*, 460 U.S. 491, 500 (1983). The magistrate judge further summarized:

> There is no bright-line rule for determining whether and when an investigatory stop turns into a de facto arrest. [*Sharpe*, 470 U.S.] at 685. This is a case-specific determination that turns on the totality of the circumstances. *United States v. Edwards*, 761 F.3d 977, 981 (9th Cir. 2014). In considering the circumstances, courts "evaluat[e] not only how intrusive the stop was, but also whether the methods used were reasonable given the specific circumstances.'" *United States v. Rousseau*, 257 F.3d 925, 929 (9th Cir. 2001) (emphasis in original) (quoting *Washington v. Lambert*, 98 F.3d 1181, 1185 (9th Cir. 1996)). "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Florida v. Royer*, 460 U.S. 491, 500 (1983).

R&R, p. 7. The magistrate judge concluded, "There was another obvious, less-intrusive means of investigation reasonably available to Trooper Amick: He could have questioned [Guerrero] himself. Trooper Amick did not lack the experience necessary to question [Guerrero] about ammunition[] smuggling—a straightforward offense which Trooper Amick accurately described." R&R, p. 8. Indeed, the magistrate judge determined the circumstances in this case were distinguishable from those in which a delay was necessary, *see e.g.*, *Sharpe*, 470 U.S. at 679, 687 n.5 (holding that an officer reasonably detained a motorist while awaiting the arrival of a federal agent, where reasonable suspicion for the stop was based on the agent's, not the officer's, observations); *Rousseau*, 257 F.3d at 927–30 (holding that an officer reasonably detained two suspects at gunpoint until other officers arrived, where one suspect was known to be armed and dangerous), rather than the informal arrangement with Homeland Security Investigations that it be called to respond to certain traffic stops.

1    After the consensual search of the vehicle, Trooper Amick knew Guerrero was
2 transporting a large amount of ammunition south toward Mexico. As Trooper Amick
3 testified, possession of ammunition is in fact illegal "[i]f it's trying to be smuggled out of the
4 country into a foreign country." Transcript of 2/4/2020 Hearing ("TR"), p. 45. Indeed,
5 Trooper Amick testified that was the crime he suspected was being committed. *Id*. In fact,
6 based on his experience, the large amount of ammunition may be indicative that there "may
7 have been, would be, or there was going to be a crime committed of ammunition being taken
8 out of the country into Mexico. *Id*. at 12. Guerrero argues the facts of the case do not
9 connect the circumstances to a possible unlawful possession. Response, p. 3. However, it
10 is the quantity itself, based on the experience of the agents, that provides the connection. In
11 considering the totality of circumstances, the Court also takes note that Guerrero was
12 traveling on a common smuggling route towards an international border, which Trooper
13 Amick testified, in his experience, was consistent with ammunition intended to be smuggled
14 into Mexico. TR, p. 48. Further, the vehicle had a very dark window tint, which could have
15 obscured items in the vehicle, *id*. at 11, Guerrero was not the registered owner of the vehicle,
16 *id*. at 35, and it appeared Guerrero may have been nervous.[1]

17    The Court recognizes that "'under the totality of the circumstances, and even though
18 individual acts may be "innocent when view in isolation, taken together, they may warrant
19 further investigation." *United States v. Raygoza-Garcia*, 902 F.3d 994, 1000 (9th Cir. 2018),
20 *citing Valdes-Vega*, 738 F.3d at 1078.

21    Additionally, when Trooper Amick shared this information with Agent Boisselle,

---

[1] Guerrero had given suspicious statements to Trooper Amick. *See e.g., United States v. Richards*, 500 F.2d 1025 (9th Cir.1974) (implausible and evasive answers to questions may add to initial suspicions). Guerrero argues Trooper Amick acknowledged that "Guerrero quickly corrected his mistake of the registered owner and 'that just dispelled any suspicions [Trooper Amick] had of him having the car." Response, pp. 2-3. However, Trooper Amick also testified that "when people get nervous, they might say the wrong name." TR, p. 52. In other words, while Trooper Amick's suspicions regarding Guerrero having the car were dispelled, he also recognized Guerrero was nervous.

- 4 -

1 Agent Boisselle was concerned that the amount of ammunition was indicative of trafficking
2 ammunition out of the country. *Id*. at 59. *See e.g.,United States v. Hoyos*, 892 F.2d 1387,
3 1392 (9th Cir. 1989) (reasonable suspicion is based on the collective knowledge of all
4 officers involved in the investigation); *United States v. Butler*, 74 F.3d 916, 921 (9th Cir.
5 1996) ("collective knowledge of police officers involved in an investigation, even if some
6 of the information known to other officers is not communicated to the arresting officer" can
7 establish probable cause). In fact, the volume of ammunition in Guerrero's vehicle was one
8 of the highest Agent Boisselle had seen. TR, p. 59.

9 Additionally, in considering whether the least intrusive means reasonably available
10 to verify or dispel the suspicion was used, the Court considers that, while Trooper Amick
11 testified he had experience interdicting contraband being transported on interstate highways,
12 he did not testify he had the experience and means to conduct an ammunition smuggling
13 investigation. Rather, he testified that, "based on previous experiences with large amounts
14 of ammunition found on the roadside," he contacts the ATF or HSI for assistance. TR, p. 27.
15 Indeed, Trooper Amick testified his duties were to enforce state traffic laws; he did not
16 testify that his duties, training or ability was to investigate federal ammunition smuggling
17 offenses. Also, Agent Boisselle testified regarding the distinction between the interdiction
18 of items on the freeway versus the HSI's focus on investigating suspected trafficking items.
19 *Id*. at 57. Further, as stated by the government:

20 There is no Arizona state law equivalent or similar to 18 U.S.C. §554(a). Trooper
21 Amick is a state trooper with the ability to enforce state traffic law (Tr. 8); his duties
and abilities do not extend to offenses that are solely punishable by federal law and
the responsibililty [sic] of federal law enforcement agents.
22
Response, p. 9 n. 3.
23
24 The Supreme Court has addressed whether "the investigative methods employed
[were] the least intrusive means reasonably available to verify or dispel the officer's suspicion
25
26 in a short period of time." *Florida v. Royer*, 460 U.S. 491, 500 (1983). The Ninth Circuit
has summarized:
27
28 In *Royer,* a plurality of the Supreme Court determined that the circumstances
surrounding the questioning did not meet this test. Royer was taken to a small room

> characterized as a "large closet" with one desk and two chairs. *Royer*, 460 U.S. at 502, 103 S.Ct. at 1327. In addition, the plurality said there was no reason indicated in the record for transferring the site of the interrogation to the small room. *Id*. at 505, 103 S.Ct. at 1328. The plurality also stated that the state failed to touch on the question of "whether it would have been feasible to investigate the contents of Royer's bag in a more expeditious way." *Id*.

*United States v. $25,000 U.S. Currency*, 853 F.2d 1501, 1507 (9th Cir. 1988). Here, Trooper Amick did not transfer the site of the interrogation to the location of federal agents experienced in trafficking investigations. Rather, he arranged for an experienced agent to arrive at the scene in a short amount of time – Agent Boisselle arrived at the scene in less than 40 minutes from when Trooper Amick contacted him.

Moreover, the "question is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it." *See e.g. United States v. Sharpe*, 470 U.S. 675, 687 (1985). Indeed, "as a highway patrolman, [Trooper Amick] lacked [Agent Boisselle's] training and experience in dealing with [ammunition trafficking] investigations[,]" *id*. at 687, n.5, and acted reasonably and diligently in awaiting Agent Boisselle's arrival. Although the trooper in *Sharpe* was assisting a federal agent and was not aware of all of the facts that had aroused the federal agent's suspicion, the Court finds it significant the Supreme Court determined a delay awaiting the arrival of an experienced investigator was lawful. As in *Sharpe*, the trooper acted reasonably and diligently in awaiting assistance from the federal agent. *Sharpe*, 470 U.S. at 685, *citation omitted* ("in assessing the effect of the length of the detention, [courts] take into account whether the police diligently pursue their investigation").

In this case, Trooper Amick acted reasonably in contacting Agent Boisselle – by making this contact he was diligently pursuing the investigation. Further, at that point, Agent Boisselle concern regarding the volume of ammunition is considered in the totality of the circumstances. *Hoyos*, 892 F.2d at 1392 (reasonable suspicion is based on the collective knowledge of all officers involved in the investigation). Agent Boisselle was assigned to a weapons trafficking task force with ATF and worked closely with DPS due to the majority of calls coming from two highways near Tucson – I-10 and I-19. Additionally, there is "no

1 rigid time limitation" on an investigative detention, but the detention may not involve "delay
2 unnecessary to the legitimate investigation of the law enforcement officers." *Sharpe*, 470
3 U.S. at 685–87 (finding a 20 minute detention reasonable where police acted diligently and
4 the defendant contributed to the delay).

5 "Given the totality of the circumstances, the prolonged traffic stop was supported by
6 reasonable suspicion that criminal activity was afoot." *United States v. Pinex*, 720 F. gApp'x
7 345, 347 (9th Cir. 2017) (where car was rented to non-present third party, stop took place in
8 alleged drug corridor, defendant gave officers false name, false social security number, and
9 false date of birth, defendant lied about location of third party, and rental car company
10 authorized search of car and requested that it be impounded the two-hour long traffic stop
11 was permissible); *see also United States v. Mayo*, 394 F.3d 1271, 1275 (9th Cir. 2005) (forty
12 minutes to pursue the inquiries that arose was not unreasonable); *United States v. Maltais*,
13 403 F.3d 550, 557 (8th Cir. 2005) (finding a detention of approximately two hours and 55
14 minutes reasonable while the officer was awaiting a narcotics dog to arrive at a remote
15 location); *but see United States v. Place*, 462 U.S. 696, 709–10 (1983) (finding a 90 minute
16 detention of the defendant's luggage unreasonable when agents did not act diligently to
17 minimize the delay).

18 In considering the totality of the circumstances, the Court finds the government used
19 the least intrusive means reasonably available to investigate the suspicion of ammunition
20 trafficking. The individual acts, which may be viewed in isolation as innocent, included one
21 of the largest volumes of ammunition seen by Agent Boisselle. Further investigation was
22 warranted, *Raygoza-Garcia*, 902 F.3d at 1000, and Trooper Amick's conduct of immediately
23 contacting an agent experienced in investigating the federal crime of ammunition trafficking
24 was the least intrusive and reasonable means to investigate. Not only was the delay
25 necessary to efficiently investigate the offense, but it may have resulted in less delay
26 compared to, for example, if Trooper Amick had transported Guerrero to an HSI office and
27 arranged to have Guerrero's vehicle removed from the scene. Although Trooper Amick
28 could have himself questioned Guerrero about the ammunition rather than wait for the federal

1 agents to arrive, the fact that he chose instead to wait for the experienced federal agents was
2 a reasonable alternative particularly given the massive quantity of ammunition involved.

3 Further, in the specific circumstances of this case, the least intrusive means
4 *reasonably* available to confirm or dispel the suspicion in a *short period of time* warranted
5 questioning by an experienced investigator rather than an agent whose experience focused
6 on traffic stops and the interdiction of contraband. The minimal delay of 30-40 minutes,
7 therefore, did not turn the detention into a *de facto* arrest. *Royer*, 460 U.S. at 500; *United
8 States v. Rousseau*, 257 F.3d 925, 929 (9th Cir. 2001), *quoting Washington v. Lambert*, 98
9 F.3d 1181, 1185 (9th Cir. 1996) (the court "evaluat[es] not only how intrusive the stop was,
10 but also whether the methods used were reasonable given the specific circumstances.").

11 The Court having found the detention of Guerrero was not a *de facto* arrest,
12 suppression of the ammunition is not appropriate.

*Statements of Guerrero*

15 Guerrero requests that his statement be suppressed as a remedy for the alleged
16 unlawful *de facto* arrest. However, the Court has concluded Guerrero was lawfully detained
17 without a *de facto* arrest. Therefore, the Court finds Guerrero's statement is admissible.

19 Accordingly, after an independent review, IT IS ORDERED:
20 1. The Report and Recommendation (Doc. 33) is ADOPTED IN PART AND
21 REJECTED IN PART.
22 2. The Motion to Suppress (Doc. 21) is DENIED.
23 DATED this 28th day of April, 2020.

_____
Cindy K. Jorgenson
United States District Judge